IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CULLMAN ALF GROUP, LLC,         }
                                }
     Plaintiff,                 }
                                }   CIVIL ACTION NO.
v.                              }
                                }   2:11-cv-3863-WMA
TAX CREDIT MANAGEMENT, INC.,    }
et al.,                         }
                                }
     Defendants.                }

**MEMORANDUM OPINION**

Before the court is the motion to compel arbitration (Doc. 3) filed by defendants, Tax Credit Management, Inc. ("TCM") and Bruce Ryals ("Ryals"). Plaintiff, Cullman ALF Group, LLC ("ALF Group"), opposes the motion. (Doc. 6). For the reasons that follow, defendants' motion to compel arbitration will be granted.

**FACTS**

The complaint arises from a bond financing agreement between the parties. ALF Group is a developer of assisted living facilities. James Deupree ("Deupree") is the manager of ALF Group. TCM is in the business of facilitating bond financing for projects such as those developed by ALF Group. Ryals is the president of TCM.

In June 2010, the parties entered into a bond financing agreement ("2010 agreement") under which TCM was to arrange bond financing for ALF Group's Westminster Cullman assisted living

1

facility project ("Westminster project") in Cullman, Alabama. Under the 2010 agreement, TCM was to receive a fee of $250,000 for arranging bond financing for the Westminster project. Pursuant to the 2010 agreement, ALF Group paid to TCM: an initial retainer in the amount of $5,000 and $10,000 after the delivery of a memorandum of understanding ("MOU")[1]. TCM allegedly failed to complete the financing arrangement for the Westminster project, and ALF Group had to seek the services of another company. As a result, in March 2011, Ryals and ALF Group agreed via a signed agreement ("2011 agreement") that TCM would receive a lower fee of $178,000.

At the closing of the Westminster project, ALF Group paid TCM $35,000, via bank wire, towards the total fee. Then ALF Group allegedly satisfied the remaining balance ($128,000) via the delivery of subordinated bonds. TCM denies that it ever agreed to accept any portion of its compensation in the form of subordinated bonds, and it insists that it is entitled to the payment of $128,000 in cash. ALF Group merely alleges, with no supporting documentation, that Ryals and TCM agreed to accept $35,000 in cash and the balance paid in subordinated bonds for TCM's work on the Westminster project. Ostensibly, such an agreement, if it exists,

---

[1] According to the 2010 agreement, a memorandum of understanding from the appropriate municipality has the effect of preserving, but not absolutely guaranteeing, for ALF Group the rights to an approved allotment of stimulus bond financing (i.e. Gulf Opportunity Zone Bonds created after Hurricanes Katrina and Rita).

was oral.

The 2010 agreement includes, but is not limited to, the following: the nature of services to be provided by TCM; the responsibilities of ALF Group; the manner, form, and amount of compensation due to TCM; the duration of the contract; a confidentiality clause; a merger clause; a choice of forum clause; a choice of law clause (choosing South Carolina law); as well as a dispute resolution clause.[2]  Tellingly, the 2011 agreement speaks only to the reduction of fees from $250,000 to $178,000.  The 2010 agreement's arbitration clause provides the following:

> The parties hereby agree to submit any dispute or controversy, at law or in equity, to arbitration under the Commercial Arbitration Rules of the American Arbitration Association. Said dispute shall be heard in the County of Charleston in the State of South Carolina. The prevailing party shall be entitled to legal costs, arbitration costs and arbitrator's fees. Attorney's fees shall not be awarded. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

Pursuant to the foregoing clause, on September 12, 2011, TCM filed a complaint with the American Arbitration Association ("AAA") office in South Carolina seeking the recovery of a cash payment of $128,000.  According to ALF Group, the AAA proceeding has been stayed pending a court's decision on the issue of arbitrability.

Subsequently, on October 7, 2011, ALF Group filed a state court action with claims for declaratory judgment and intentional

---

[2] Both parties have only argued Alabama law, and not South Carolina law, with respect to the issues in this case.

interference with business relations. ALF Group seeks a declaration that disputes arising from the 2011 agreement are not subject to arbitration, a declaration that ALF Group has fulfilled its obligations under the 2011 agreement, and a declaration that ALF Group has no unfulfilled obligations to TCM or Ryals. The amended complaint also claims that Ryals engaged in conduct amounting to intentional interference with ALF Group's assisted living facility project in Decatur, Alabama ("Decatur project"). The amended complaint states that Lawson Financial Corporation ("LFC") and its managing member, John Lynch ("Lynch") are performing bond work for the Decatur project.[3] ALF Group alleges that Ryals contacted Lynch and falsely and maliciously stated that Deupree and his wife were going through a divorce which would impact the bond closing for the Decatur project.

    The case was removed to this court on November 9, 2011 from the Circuit Court of Jefferson County, Alabama.

## DISCUSSION

    ALF Group contends that the 2011 agreement is an entirely new contract that superseded the 2010 agreement. Further, ALF Group argues that because the 2011 agreement did not incorporate the terms of the 2010 agreement by reference, the parties did not

---

[3] The complaint fails to state, but Ryals declares and the 2011 agreement acknowledges, that TCM also has an agreement with ALF Group to arrange bond financing for the Decatur project for which TCM is allegedly due $163,000 at closing.

intend arbitration in this case.  From this, ALF Group argues that since the 2011 agreement does not contain an arbitration clause, TCM's motion to compel arbitration should be denied.

TCM and Ryals contend the 2011 agreement constituted no more than an amendment whereby it agreed to reduce the amount of compensation to TCM from $250,000 to $178,000.  After applying credits for previous payments[4], the net sum to be paid to TCM was $163,000.  At the closing of the Westminster project, ALF Group paid TCM $35,000 in cash and attempted to satisfy the remaining balance through the delivery $128,000 in subordinated bonds.  TCM denies that it ever agreed to accept any compensation in the form of subordinated bonds.

While the 2011 agreement acknowledges that "bond proceeds will cover these lower fees," this does not, as ALF Group contends, necessarily mean that TCM agreed to accept bonds, particularly subordinated bonds, as a form of payment.  If ALF Group were correct, that would make TCM a bondholder, and a subordinated one at that.  Nowhere in either the 2010 agreement or the 2011 agreement do the parties contemplate paying TCM's fee with bonds instead of dollars.  Nowhere in its brief does ALF Group point to TCM's "agreement" to accept bonds instead of dollars.  And nowhere in the record does it say that "proceeds" means anything other than

---

[4]*See* aforementioned retainer of $5,000 and $10,000 paid upon delivery of MOU.

its plain meaning in the bond financing context - the amount of money derived from an issuance of bonds.

The parties seemingly only modified their original contract by changing the **amount** of compensation.  A modification of a contract is a change in one or more respects.  It may introduce new elements into the details of the contract and cancel others but leaves the general purpose and effect undisturbed.  Here, the parties agreed to alter the amount of compensation, and nothing else, while leaving intact the remaining provisions and obligations of the original contract.  ALF Group claims that the 2011 agreement "superseded the 2010 agreement and is the active contract between ALF [Group] and TCM."  Yet, the 2011 agreement only memorializes a prior phone conversation between Deupree and Ryals, where they agreed to reduce  the fees due to TCM under the 2010 agreement. The 2011 agreement is not an entirely new agreement calling for different rights and obligations of the parties.  The 2011 agreement is inextricably linked to the 2010 agreement, which is subject to an arbitration clause of nearly universal application.

Any dispute arising out of the 2010 agreement is to be arbitrated pursuant to the arbitration clause. Because the parties dispute the form and manner of compensation due to TCM, the parties are to proceed to arbitration on issues in dispute.  As to ALF Group's tortious interference claim, it also arises out of the original contract in that ALF Group claims that Ryals interfered

with the Decatur project in an effort to "bully" ALF Group to comply with the 2010/2011 agreement.  Therefore, this matter must also be decided by the arbitrator.  Piecemeal adjudication would be a total waste of judicial and arbitrable resources.

## CONCLUSION

For the foregoing reasons, defendants' motion to compel arbitration will be granted.  A separate order effectuating this opinion will be entered.

DONE this 4th day of January, 2012.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE